UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA


CURTIS A. GIBBS,                    ) 1:07-cv—01563-SKO-HC
                                   )
                Petitioner,        ) ORDER GRANTING IN PART
                                   ) RESPONDENT'S MOTION TO DISMISS
                                   ) THE PETITION FOR WRIT OF HABEAS
        v.                         ) CORPUS (Docs. 49, 1)
                                   )
J. E. THOMAS,                      ) ORDER DENYING IN PART
                                   ) PETITIONER'S PETITION FOR WRIT OF
                Respondent.        ) HABEAS CORPUS (Doc. 1)
                                   )
_____   ) ORDER DIRECTING THE ENTRY OF
                                     JUDGMENT FOR RESPONDENT


        Petitioner is a federal prisoner proceeding pro se in a

habeas corpus action pursuant to 28 U.S.C. § 2241.  Pursuant to

28 U.S.C. § 636(c)(1), the parties have consented to the

jurisdiction of the United States Magistrate Judge to conduct all

further proceedings in the case, including the entry of final

judgment, by manifesting their consent in writings signed by the

parties or their representatives and filed by Petitioner on

November 7, 2007, and on behalf of Respondent on June 9, 2010.

        Pending before the Court is Respondent's motion to dismiss

the petition for lack of subject matter jurisdiction, filed on

September 8, 2010.  Petitioner filed an opposition (doc. 53) on

1

October 7, 2010.[1]  Petitioner's earlier objection to the motion (doc. 51), filed on September 27, 2010, was deemed by a previous order to be a partial opposition to the motion.  No reply was filed.

I.   <u>In Personam Jurisdiction pursuant to 28 U.S.C. § 2241</u>

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which applies to all petitions for writ of habeas corpus filed after its enactment. <u>Lindh v. Murphy</u>, 521 U.S. 320, 327 (1997); <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1499 (9th Cir. 1997).  Petitioner filed his petition for writ of habeas corpus on October 1, 2007.  Thus, the AEDPA applies to the petition.

With respect to jurisdiction over the person, 28 U.S.C. § 2241(a) provides that writs of habeas corpus may be granted by the district courts "within their respective jurisdictions."  A writ of habeas corpus operates not upon the prisoner, but upon the prisoner's custodian.  <u>Braden v. 30th Judicial Circuit Court of Kentucky</u>, 410 U.S. 484, 494-495 (1973).  A petitioner filing a petition for writ of habeas corpus under 28 U.S.C. § 2241 must file the petition in the judicial district of the petitioner's custodian.  <u>Brown v. United States</u>, 610 F.2d 672, 677 (9th Cir. 1990).  It is sufficient if the custodian is in the territorial jurisdiction of the court at the time the petition is filed; transfer of the petitioner thereafter does not defeat personal jurisdiction that has once been properly established.  <u>Ahrens v.</u>

_____

[1] Although Petitioner's document was entitled, "Objection to the Respondent's Motion to Dismiss," the Court understands it to be an opposition to the motion.

<u>Clark</u>, 335 U.S. 188, 193 (1948), <u>overruled on other grounds in</u> <u>Braden v. 30th Judicial Circuit Court of Kentucky</u>, 410 U.S. at 193, citing <u>Mitsuye Endo</u>, 323 U.S. 283, 305 (1944); <u>Francis v.</u> <u>Rison</u>, 894 F.2d 353, 354 (9th Cir. 1990).

Petitioner initially named the warden of the United States Penitentiary at Atwater, California, the institution where he was confined at the time the petition was filed; that institution was within the territorial jurisdiction of this Court.  The transfer of Petitioner to a different custodial institution did not defeat this Court's jurisdiction.  Subsequently, the caption was amended to reflect the name of the warden of the institution to which Petitioner was transferred.  (Doc. 17.)

The Court concludes that it has in personam jurisdiction over the Respondent.

The Court has further concluded that it has subject matter jurisdiction to review Petitioner's claims pursuant to 28 U.S.C. § 2241.  However,  the scope of the Court's subject matter jurisdiction is more thoroughly discussed below in connection with Petitioner's specific claims.

II.   <u>Proceeding by a Motion to Dismiss</u>

Title 28 U.S.C. § 2241 provides that writs of habeas corpus may be granted by a district court within its jurisdiction only to a prisoner whose custody is within enumerated categories, including but not limited to custody under the authority of the United States or custody in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2241(a), (c)(1), (3).

A district court must award a writ of habeas corpus or issue

3

an order to show cause why it should not be granted unless it appears from the application that the applicant is not entitled thereto. 28 U.S.C. § 2243. Rule 4 of the Rules Governing Section 2254 Cases (Habeas Rules) is applicable to proceedings brought pursuant to § 2241. Habeas Rule 1(b). Habeas Rule 4 permits the filing of "an answer, motion, or other response," and thus it authorizes the filing of a motion in lieu of an answer in response to a petition. Rule 4, Advisory Committee Notes, 1976 Adoption and 2004 Amendments. This gives the Court the flexibility and discretion initially to forego an answer in the interest of screening out frivolous applications and eliminating the burden that would be placed on a respondent by ordering an unnecessary answer. Advisory Committee Notes, 1976 Adoption. Rule 4 confers upon the Court broad discretion to take "other action the judge may order," including authorizing a respondent to make a motion to dismiss based upon information furnished by respondent, which may show that a petitioner's claims suffer a procedural or jurisdictional infirmity, such as res judicata, failure to exhaust state remedies, or absence of custody. Id.

   The Supreme Court has characterized as erroneous the view that a Rule 12(b)(6) motion is appropriate in a habeas corpus proceeding. See, Browder v. Director, Ill. Dept. of Corrections, 434 U.S. 257, 269 n. 14 (1978). However, in light of the broad language of Rule 4, it has been held in this circuit that motions to dismiss are appropriate in cases that proceed pursuant to 28 U.S.C. § 2254 and present issues of failure to exhaust state remedies, O'Bremski v. Maas, 915 F.2d 418, 420 (9th Cir. 1990) (a motion to dismiss for failure to raise any issue of federal law,

4

which was based on the insufficiency of the facts as alleged in the petition to justify relief as a matter of law, was evaluated under Rule 4); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (procedural default in state court); Hillery v. Pulley, 533 F.Supp. 1189, 1194 n. 12 (E.D.Cal. 1982) (a motion to dismiss for failure to exhaust state remedies is appropriately considered after receipt of evidence pursuant to Rule 7(a) to clarify whether or not the possible defect, not apparent on the face of the petition, might preclude a hearing on the merits, and after the trial court has determined that summary dismissal is inappropriate).

Analogously, a motion to dismiss is appropriate in a proceeding pursuant to 28 U.S.C. § 2241.

Here, Respondent's motion to dismiss is based on lack of subject matter jurisdiction. A federal court is a court of limited jurisdiction which has a continuing duty to determine its own subject matter jurisdiction and to dismiss an action where it appears that the Court lacks jurisdiction. Fed. R. Civ. P. 12(h)(3); CSIBI v. Fustos, 670 F.2d 134, 136 n.3 (9th Cir. 1982) (citing City of Kenosha v. Bruno, 412 U.S. 507, 511-512 (1973)); Billingsley v. C.I.R., 868 F.2d 1081, 1085 (9th Cir. 1989). Respondent's motion is similar in procedural posture to a motion to dismiss for failure to exhaust state remedies or for state procedural default. Further, the motion does not raise material factual disputes. Finally, Respondent has not yet filed a formal answer.

The Court therefore exercises its discretion to review Respondent's motion pursuant to its authority under Rule 4.

Further, as the following analysis demonstrates, the Court will deny Respondent's motion to dismiss in part and will exercise its jurisdiction to consider Petitioner's contentions to the extent permissible under the standard of review applicable to a petition brought pursuant to 28 U.S.C. § 2241 to review the proceedings of a court-martial.  The record before the Court is sufficient to permit a decision, there are no factual disputes concerning the contents of the record, and the case has been fully briefed.

III.  Background

The petition was filed on October 1, 2007, when Petitioner was confined at the United States Penitentiary at Atwater, California.  Petitioner challenges his conviction by court-martial of murder pursuant to 10 U.S.C. § 918[2] rendered on December 13, 1990.  Petitioner is serving a life sentence.  (Pet. 2.)[3]  Petitioner appealed the conviction to the Navy-Marine Corps Court of Military Review and then to the United States Court of

---

[2] Title 10 U.S.C. § 918 provides:
Any person subject to this chapter who, without justification or excuse, unlawfully kills a human being, when he-
        (1) has a premeditated design to kill;
        (2) intends to kill or inflict great bodily harm;
        (3) is engaged in an act which is inherently dangerous to another and evinces a wanton disregard of human life; or
        (4) is engaged in the perpetration or attempted perpetration of burglary, sodomy, rape, rape of a child, aggravated sexual assault, aggravated sexual assault of a child, aggravated sexual contact, aggravated sexual abuse of a child, aggravated sexual contact with a child, robbery, or aggravated arson;
is guilty of murder, and shall suffer such punishment as a court-martial may direct, except that if found guilty under clause (1) or (4), he shall suffer death or imprisonment for life as a court-martial may direct.

[3] For the sake of clarity, the page numbers of filed documents are those which appear in the upper right-hand corner of the pages and are assigned by the Court's electronic filing system.

Military Appeals.  (Id.)  No contention is made that the crime
was not service-related.

Petitioner raises three grounds in the petition:  1) Lt.
Col. Stone, a member of the military jury, had prejudicial
conversations with other officers and a lawyer about Petitioner's
case before the court martial proceedings, concealed them during
voir dire, and thereby committed a fraud upon the court and
denied Petitioner his rights pursuant to Article 25 of the
Uniform Code of Military Justice (UCMJ) and 10 U.S.C. § 825; 2)
the prosecution committed gross misconduct and thereby violated
Petitioner's rights under the Due Process Clause of the
Fourteenth Amendment; and 3) Petitioner's dishonorable discharge
was an administrative act that violated 5 U.S.C. § 551 and 32
C.F.R. § 45.3, and therefore Respondent lacks jurisdiction over
Petitioner; further, Petitioner is a "Title 10 U.S.C." military
prisoner wrongfully held in federal prison pursuant to the
authority of title 18.  (Pet. 3-4.)

Respondent previously moved to dismiss the petition on the
same grounds raised here, namely, that the Court lacks subject
matter jurisdiction to review Petitioner's claims.  (Doc. 9.)
The motion was denied without prejudice because the record was
inadequate to permit the Court to determine the motion.  (Docs.
17, 3-5; 19, 1-2.)

Respondent briefly summarizes the facts of the offense as
found in "[d]ocuments submitted with his petition."  (Mot. 1.)
No documents were attached to Petitioner's five-page petition,
but the Court will assume that Respondent is referring to
Petitioner's objections (doc. 18, filed August 18, 2008) to

earlier findings and recommendations, which included a document
entitled "ASSIGNMENT OF ERRORS AND BRIEF ON BEHALF OF APPELLANT,"
that was stamped received on December 4, 1991, by the United
States Navy-Marine Corps Court of Military Review. (Doc. 18, 11-76.)

In the brief there are set forth "[u]ncontested [f]acts"
pertinent to the charge, which concerned the premeditated murder
of Mrs. Brenda Salomon on August 18, 1989. (Id. at 17.)
Petitioner confessed to the killing, revealing that while at the
Shipwreck Lounge, he encountered Salomon and then left the
lounge. When Petitioner entered his truck, Salomon, who was very
drunk, tapped on the window and asked Petitioner to take her out
to get something to eat. Petitioner agreed and bought Salomon
some fast food. When Salomon passed out several times and failed
to tell Petitioner where she lived, Petitioner stopped at a
telephone booth and told her to get out of his truck and call
someone to come to pick her up. When she called him names,
slapped him, and failed to leave the truck, he drove into a
wooded area, stopped, and ordered her out of the truck. A
physical altercation ensued, and Petitioner pulled Salomon out of
the truck. When Salomon removed her shorts, taunted Petitioner,
and attacked him as he tried to enter his truck, Petitioner
became enraged, hit her repeatedly, retrieved his "Ninja To"
sword from the truck, and struck Salomon so hard that the sword's
handle detached from its blade. (Id. at 18, 21-23.) The blow
severed her spinal cord and vertical arteries. (Id.)

Petitioner returned to the lounge after retrieving the sword
and throwing Salomon's things out of the truck, and stayed there

8

until closing time.  The body was discovered in a wooded area on the Camp Lejeune Marine Corps base, and multiple items of corroborating evidence were found.  (<u>Id.</u> at 17-18.)

IV.  <u>Jurisdiction to Review Petitioner's Conviction by Court-Martial and Scope of Review</u>

The military justice system is independent of the federal court system; it has its own source in the Constitution and separate rules of procedure and doctrines of substantive law. <u>Davis v. Marsh</u>, 876 F.2d 1446, 1447 (9th Cir. 1989).  A court-martial has jurisdiction to punish service members for "service-connected" offenses, and the findings and sentences of a court-martial are final and conclusive on all courts of the United States.  10 U.S.C. § 876; <u>Schlesinger v. Councilman</u>, 420 U.S. 738, 745 & n.10 (1975).

With the exception of the United States Supreme Court's limited certiorari jurisdiction, the acts of a court-martial, within the scope of its jurisdiction and duty, cannot be directly reviewed by civil courts.  Instead, Congress has given the power of direct review to military entities and a specialized Court of Military Appeals instead of Article III courts.  <u>Schlesinger v. Councilman</u>, 420 U.S. 738, 746 (citing <u>Noyd v. Bond</u>, 395 U.S. 683, 694 (1969)); <u>Davis v. Marsh</u>, 876 F.2d 1446, 1448 & n.3, 1449.

However, collateral relief from a judgment of a court-martial may be sought where the judgment is void or without res judicata effect because of a "lack of jurisdiction or other equally fundamental defect...."  <u>Schlesigner v. Councilman</u>, 420 U.S. at 746-47, 753; <u>see</u>, <u>Davis v. Marsh</u>, 876 F.2d 1446, 1448 (stating that court-martial determinations are "collaterally

9

1  reviewable for constitutional or jurisdictional error").
2  Collateral review by habeas corpus is generally available only
3  when all available military remedies have been exhausted.
4  Schlesinger v. Councilman, 420 U.S. 738, 747, 753; Gusic v.
5  Schilder, 340 U.S. 128, 131 (1950); Davis v. Marsh, 876 F.2d at
6  1449.  If a claim raised on habeas was not raised at either level
7  of appeal in the military court system, it is waived absent a
8  showing of cause and prejudice.  Davis v. Marsh, 876 F.2d 1446,
9  1448.

10      In Burns v. Wilson, 346 U.S. 137, 139, 142-46 (1953), a
11  plurality of justices decided that a federal court has
12  jurisdiction pursuant to 28 U.S.C. § 2241 to consider claims of
13  fundamental, constitutional error in the proceedings of a court-
14  martial.  However, the scope of review differs from that of a
15  federal court's review of judgments of civil courts.  Id.  A
16  federal civil court may determine whether a military tribunal has
17  given fair consideration to each claim and thus has dealt fully
18  and fairly with an allegation.  Burns v. Wilson, 346 U.S. 137,
19  142-44.  A defendant must have an opportunity to tender an issue.
20  Whelchel v. McDonald, 340 U.S. 122, 124 (1950).

21      The plurality in Burns further decided that if a military
22  court has manifestly refused to consider a claim of fundamental
23  unfairness, then a district court is empowered to review it de
24  novo.  Burns v. Wilson, 346 U.S. 137, 142-43.  However, a civil
25  court may not reweigh the evidence relevant to the allegations in
26  the petition or otherwise evaluate the correctness of the
27  military's evaluation of the evidence.  Burns v. Wilson, 346 U.S.
28  137, 144; Whelchel v. McDonald, 340 U.S. 122, 149.

In <u>Burns</u>, the opinions of the military reviewing courts revealed that before rejecting the petitioners' contentions, the military courts scrutinized trial records to review the procedures afforded the petitioners and to ascertain whether the decisions of the trial court were justified. <u>Burns</u>, 346 U.S. at 144-46. The trial records reflected an inquiry on the part of the trial court pursuant to which evidence pertinent to the claims was admitted and considered. Further, the pertinent issues were explored or were available for exploration. The plurality in <u>Burns</u> concluded that under such circumstances, the petitioners had failed to show that the military review was legally inadequate to resolve their claims. <u>Burns</u>, 346 U.S. at 146.

The standard of review for full and fair consideration by a court-martial has consistently been applied to habeas petitions in this circuit. <u>Daigle v. Warner</u>, 490 F.2d 358, 366 (9th Cir. 1974) (a claim of deprivation of fundamental due process of law by denial of counsel at a summary court-martial was to be evaluated on remand under the "fully and fairly" considered test of <u>Burns v. Wilson</u> (internal quotation marks omitted), <u>overruled on other grounds by</u> <u>Middendorf v. Henry</u>, 425 U.S. 25, 48 (1976); <u>Broussard v. Patton</u>, 466 F.2d 816, 818-19 (9th Cir. 1972) (a claim that the statute of limitations barred a court-martial proceeding was rejected because the military gave full and fair consideration to each of the petitioner's claims); <u>Sunday v. Madigan</u>, 301 F.2d 871, 873 (9th Cir. 1962) (after articulation of the <u>Burns</u> standard, a claim of lack of jurisdiction was evaluated by determining the time the pertinent statute took effect);

1  Mitchell v. Swope, 224 F.2d 365, 366-67 (9th Cir. 1955) (a claim

2  concerning denial of a continuance to prepare for trial was

3  determined to have been fully and carefully examined by the

4  military's Board of Review).

5       In the present case, Petitioner acknowledges that his case

6  was reviewed by both the Navy-Marine Corps of Military Review and

7  the United States Court of Military Appeals.  (Pet. 2.)

8       V.  Lt. Col. Stone's Pretrial Conversations

9       Review of the record before this Court shows that

10 Petitioner's second claim, that Lt. Col. Stone committed a fraud

11 upon the Court concerning alleged pretrial conversations and

12 thereby deprived Petitioner of rights, was considered in the

13 military post-trial proceedings.

14       A.  Facts

15      On or about December 18, 1991, Petitioner, who was

16 represented by appellate defense counsel, filed his opening brief

17 in the United States Navy-Marine Corps Court of Military Review.

18 (Mot., Ex. 1 [doc. 49-1], 2.)  In the brief, Petitioner argued

19 that the military trial judge erred by denying Petitioner's post-

20 trial motion, made almost two months after Petitioner's

21 conviction and sentence, for a mistrial based upon newly

22 discovered evidence of a court member's undisclosed pre-trial

23 communications with a third party about Petitioner's case.  (Id.

24 at 36, 36-41.)

25      The facts of the conversations were detailed.  In connection

26 with the motion for a new trial, William R. Fisher, who had been

27 a captain in the Marine Corps and Marine defense counsel before

28 leaving active duty in November 1989, testified that in September

12

or October 1989, he spoke briefly to Stone about Petitioner's case at the Officer's Club in a conversation in which several other officers, including Major Frederick Keegan, participated. Everyone was familiar with the case from local media, and the subject somehow came up; Fisher described the circumstances of Salomon's death to Stone and opined that the case was not about guilt or innocence, but was about the type of punishment that the accused would receive. (Id. at 36-37.)  When Stone later told Fisher that Stone had been detailed to appellant's court, Fisher told Stone that he could not discuss the case further with him. (Id. at 37.)

Keegan also testified that although he recalled discussing Petitioner's case with others, he did not specifically recall discussing it with Fisher.  Keegan did recall hearing Stone admonish someone, possibly Fisher, that he could not listen to that because he might be a member on the court.  (Id. at 38.)

Stone denied ever having conversed with Fisher about the case or telling Fisher that he could not discuss the case.  It was possible, however, that Stone could have happened upon the conversation of others about the case, but he would not have known the topic of the conversation.  (Id. at 38-39.)

In the brief, Petitioner argued that the military judge erred in finding that no appearance of unfairness existed and in denying the Petitioner's motion for a mistrial.  (Id. at 39-41.)

The United States responded in its reply brief with additional facts from the testimony, including Fisher's admission that the conversation might never have occurred or that Stone was not paying attention; further, the conversation was a light

13

conversation while standing at the bar on a "free beer night."
(Mot., Ex. 2, 50-52.)  Fisher opined that Stone would never
conceal the fact that such a conversation had occurred.  None of
the other possible participants recalled the conversation.  (Id.
at 51-52.)

In its brief, the United States noted the military judge's
findings of fact, namely, that Stone did not hear the
conversation and that there was no evidence that Stone knew
anything about the case before the trial; thus, the appearance of
unfairness did not exist.  (Id. at 54.)  The United States argued
that there was no substantial evidence that the alleged
conversation occurred and requested that Petitioner's contention
on that ground be denied because there was no demonstration of
manifest injustice.  (Id. at 54-55.)

Petitioner's motion for oral argument was granted, and
argument was scheduled for August 6, 1992.  (Mot., Ex. 3 [doc.
49-3], 2.)  On December 24, 1992, the United States Navy-Marine
Corps Court of Military Review affirmed the findings of
Petitioner's guilt and the sentence, stating in pertinent part:

> We have examined the record of trial, the assignments
> of error, and the Government's reply thereto, and have
> concluded that the findings and sentence are correct
> in law and fact and that no error materially prejudicial
> to the substantial rights of the appellant was
> committed.

(Mot., Ex. 4 [doc. 49-3], 4.)

With the assistance of counsel, Petitioner sought review by
the United States Court of Military Appeals.  (Mot., Ex. 5 [doc.
49-3], 6.)  A general opposition submitted by the United States
in that proceeding on May 5, 1993, reflects that it relied on the

brief filed in the United States Navy-Marine Corps Court of
Military Review and the decision of that court; otherwise, the
right to file a full answer or other briefing was waived absent a
request by the court.  (Mot., Ex. 6 [doc. 49-3], 8.)  The court
granted the petition for review and affirmed the decision on
January 26, 1994.  (Mot., Ex. 7 [doc. 49-3], 10.)

            B.  Analysis

       Based on the record of the court-martial and the ensuing
appeals in the military courts, the Court concludes that the
issue concerning concealment of alleged pretrial conversations of
a member of the court was raised and was fully and fairly
considered by the military tribunals.  The facts were developed
and considered by the trial court, which made an informed
determination that the alleged conduct did not occur and that a
new trial was not warranted.  The issue was fairly and fully
considered by the military appellate tribunals.  There is no
fundamental error or error of jurisdictional stature.

       Petitioner asserts that Stone engaged in multiple
conversations with Fisher and that there was a possibility of
command influence by the senior officers involved.  (Opp., doc.
53, 2.)  It is not for this Court to reweigh the evidence before
the court-martial.

       Further, the Court notes that in this proceeding, Petitioner
describes Stone's alleged conduct as a fraud upon the court.
(Pet. 3.)  It is not clear, but it may be that by so
characterizing Stone's conduct, Petitioner is attempting to raise
an additional issue in this Court that was not raised in the
military tribunals.  Petitioner has not shown cause and

1  prejudice.  <u>Davis v. Marsh</u>, 876 F.2d 1446, 1448.  To the extent
2  that Petitioner is attempting to raise an issue not raised in the
3  military tribunals, the Court concludes that the issue is waived.
4  <u>Schlesinger v. Councilman</u>, 420 U.S. 738, 747, 753; <u>Gusic v.
5  Schilder</u>, 340 U.S. 128, 131 (1950); <u>Davis v. Marsh</u>, 876 F.2d at
6  1449.

7       Although Respondent argues that the petition should be
8  dismissed, this Court has exercised its habeas corpus
9  jurisdiction to consider whether the issue was fully and fairly
10 considered by the military tribunals, and the Court has
11 determined that this issue did receive such consideration.
12 Therefore, to the extent appropriate, this Court has exercised
13 its subject matter jurisdiction to review the court-martial
14 determination; denial of the claim to the extent it was reviewed
15 thus appears to be correct.  For example, in <u>Lips v. Commandant,
16 U.S. Disciplinary Barracks</u>, 997 F.2d 808, 811 (10th Cir. 1993),
17 in a habeas corpus proceeding, the Court of Appeals determined
18 that the military courts gave the matters raised in the habeas
19 proceeding full and fair consideration, and thus the district
20 court's consideration and determination of the issues <u>de novo</u> was
21 erroneous.  The Court of Appeals reversed the judgment of the
22 district court and remanded the cause with directions to the
23 district court to deny the petition.  <u>Lips</u>, 997 F.2d 808, 812.

24      Accordingly, with respect to this issue, the Court concludes
25 that it is appropriate to deny the petition, and to dismiss the
26 petition for lack of subject matter jurisdiction to the extent
27 that Petitioner seeks this Court to engage in any further review
28 of the actions of the military courts.

16

1      VI.   <u>Prosecutorial Misconduct</u>

2          Petitioner alleges in his third claim that there was gross

3      misconduct by the prosecution that violated the Due Process

4      Clause of the Fourteenth Amendment.  Petitioner does not set

5      forth any facts concerning this claim.

6          Preliminarily, the Court notes that in view of the absence

7      of any allegations of fact concerning this claim, the claim is

8      subject to dismissal.

9          The Rules Governing Section 2254 Cases in the United States

10     District Courts (Habeas Rules) are appropriately applied to

11     proceedings undertaken pursuant to 28 U.S.C. § 2241.  Habeas Rule

12     1(b).  Habeas Rule 4 requires the Court to make a preliminary

13     review of each petition for writ of habeas corpus.  The Court

14     must summarily dismiss a petition "[i]f it plainly appears from

15     the petition and any attached exhibits that the petitioner is not

16     entitled to relief in the district court...."  Habeas Rule 4;

17     <u>O'Bremski v. Maass</u>, 915 F.2d 418, 420 (9th Cir. 1990); <u>see</u> <u>also</u>

18     <u>Hendricks v. Vasquez</u>, 908 F.2d 490 (9th Cir. 1990).  Habeas Rule

19     2(c) requires that a petition 1) specify all grounds of relief

20     available to the Petitioner; 2) state the facts supporting each

21     ground; and 3) state the relief requested.  Notice pleading is

22     not sufficient; rather, the petition must state facts that point

23     to a real possibility of constitutional error.  Rule 4, Advisory

24     Committee Notes, 1976 Adoption; <u>O'Bremski v. Maass</u>, 915 F.2d at

25     420 (quoting <u>Blackledge v. Allison</u>, 431 U.S. 63, 75 n.7 (1977)).

26     Allegations in a petition that are vague, conclusory, or palpably

27     incredible are subject to summary dismissal.  <u>Hendricks v.</u>

28     <u>Vasquez</u>, 908 F.2d 490, 491 (9th Cir. 1990).

                                    17

1    Further, the Court may dismiss a petition for writ of habeas

2  corpus either on its own motion under Habeas Rule 4, pursuant to

3  the respondent's motion to dismiss, or after an answer to the

4  petition has been filed.  Advisory Committee Notes to Habeas Rule

5  8, 1976 Adoption; see, Herbst v. Cook, 260 F.3d 1039, 1042-43

6  (9th Cir. 2001).

7    Respondent notes that in his direct appeal, Petitioner

8  alleged as the sixth ground that his conviction should be set

9  aside due to prosecutorial misconduct.  It appears from the

10 opposition to the motion that this is the misconduct issue that

11 Petitioner seeks to raise.  (Opp. 3-8.)  Petitioner stated the

12 issue in the following manner in the appellate brief filed in the

13 military proceedings:

14    TRIAL COUNSEL CREATED THE APPEARANCE OF GROSS IMPROPRIETY
      AND COMMITTED PROSECUTORIAL MISCONDUCT BY PARTICIPATING
15    IN THE INVESTIGATION OF, AND RECOMMENDING CAPITAL
      REFERRAL IN, A CASE IN WHICH AN IMMEDIATE FAMILY MEMBER
16    HAD A POTENTIAL CONFLICT OF INTEREST.

17 (Mot., Ex. 1, 45.)

18    Petitioner's appellate brief shows that the military courts

19 were informed of legal standards concerning a prosecutor's legal

20 and ethical duties to protect an accused's right to a fair trial,

21 ensure that justice is done, and guard against the appearance of

22 prosecutorial impropriety.  (Ex. 2, 47.)  Petitioner argued that

23 the prosecutor's participation in the investigation prevented him

24 from being appropriately objective.  (Ex. 1, 45.)  He further

25 argued that the unethical conduct of counsel had resulted in an

26 unfair capital referral process which culminated in his case

27 being referred as a capital case.  The capital referral resulted

28 in turn in the loss of potentially mitigating procedural choices

1  that he might have made, such as pleading guilty or electing
2  trial by a military judge alone.   (Id. at 49.)

3      The appellate briefs of both parties reflect that this issue
4  was addressed in detail in the military courts.

5      At trial, which took place between October 12, 1989, and
6  January 11, 1990, Petitioner moved to recuse Captain Guy L.
7  Womack, the prosecutor (referred to in the military record as
8  "trial counsel"), on the ground that he had become an accuser or
9  investigating officer.  (Ex. 2, 11, 72; Ex. 1, 45.)   The facts
10  concerning Womack's participation were developed by testimony.
11  Womack participated with NIS agents in the field investigation of
12  the case while possessing an NIS identification card and a
13  firearm, and he had prior professional involvement as a military
14  liaison with the NIS command.  Womack opined that Petitioner was
15  a serial killer who was responsible for at least two other
16  murders, but no evidence concerning the other murders was offered
17  during the trial.  (Ex. 1, 45.)

18      The government's appellate brief reflects that the facts
19  developed in the proceedings included the time frame of the
20  pretrial investigation and the details of the determination that
21  Petitioner's case be referred as a capital case.  (Ex. 2, 73.)
22  The decision involved conflicting recommendations of the
23  investigation officer (not Womack), the commanding officer, and
24  the convening authority's staff judge advocate.  Although Womack
25  had recommended to the staff judge advocate that the case be
26  referred as capital, his recommendation was based on the
27  brutality of the crime and the victim's status as a dependent
28  wife.  (Id. at 73-74.)  The staff judge advocate recommended that

19

the case be referred as capital, but he advised the convening
authority that the latter had the discretion to decide and that
the pertinent legal criteria should guide the decision.  The
convening authority referred the case as a capital case on
October 4, 1989.  Womack had no direct communications with the
convening authority, and his advice to the staff judge advocate
was not influenced by his relationship with his sister, who later
authored an article concerning the case.  (Id. at 74.)

The military judge denied the defense motion to remove
Womack.  The judge found that although Womack had become
excessively involved in the investigation, he committed no
misconduct.  He did not become an accuser or investigating
officer as a result of his limited participation in the
investigation of Salomon's murder.  (Ex. 2, 72; Ex. 1, 45.)
Petitioner did not contend on appeal that the convening authority
abused it discretion, and he did not attack the military judge's
findings.  (Ex. 2, 72, 75.)

After the trial, an assistant trial counsel informed
Petitioner's trial-level defense counsel that Womack's sister had
published in a magazine an article concerning Petitioner's case.
(Ex. 1, 46.)  Petitioner moved for a hearing into possible
prosecutorial misconduct relating to the publishing of the
article.  (Ex. 2, 73.)  The facts were developed in that
proceeding.  Petitioner attached a copy of the article, which was
published in the November 1990 issue of True Detective.  (Id. at
73 n.28.)  Affidavits of Womack and his sister, Barbara Malenky,
were submitted in connection with the government's opposition to
the motion.  (Id. at 72, 73 n.27.)  Their affidavits tended to

show that although Womack may have discussed the status and
interesting facts of the case with Malenky, Malenky did not have
or express an interest in writing about Petitioner's case before
the trial.  She did not become interested in the case or decide
to write an article about it until she attended the first day of
trial on January 2, 1990, in the course of a holiday visit.  (Id.
at 74-75; Ex. 1, 46.)  Although there was evidence tending to
show she had sought to publish other articles, Malenky
characterized her article about Petitioner's case as her first
attempt to publish a non-fiction article, and Womack did not
learn of her intent or interest until the latter part of the
trial or after its conclusion.  (Ex. 2, 75.)  The article
contained some information that was not presented at trial.  (Ex.
1, 46-47.)

     It thus appears that what this Court understands as the
basis for Petitioner's argument concerning prosecutorial
misconduct was fully and fairly reviewed in the military courts.
No fundamental, jurisdictional error appears.

     Petitioner argues that the military tribunals erred in
denying a defense motion to remove the prosecutor, who must have
given extra-record information to his sister.  Mere error is not
within the scope of this Court's review.

     Petitioner further alleges generally that the military's
appellate judicial officers had previously served in a judicial
capacity with the trial judge and thus were inclined to "rubber
stamp" the trial judge's actions.  (Opp. 7.)  Petitioner does not
state any specific facts in support of this contention.  He has
not demonstrated that any objective factor external to the

defense impeded presentation of this argument, that the factual or legal basis for such a claim was not reasonably available to his counsel, or that there was interference by the pertinent officials.  Cf., <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). Petitioner has not demonstrated cause and prejudice.  Thus, the issue is waived.

Accordingly, the Court concludes that with respect to this issue, it is appropriate to deny the petition, and to dismiss the petition for lack of subject matter jurisdiction to the extent that Petitioner seeks this Court to engage in any further review of the actions of the military courts with respect to the issue.

VII.   <u>Petitioner's Discharge</u>

Petitioner alleges that his dishonorable discharge was an administrative act that violates the Administrative Procedure Act, 5 U.S.C. § 551, and 32 C.F.R. § 45.3, and therefore, the warden at his institution of confinement does not have jurisdiction over him.  (Pet. 3.)

A.   <u>Facts</u>

The facts Petitioner alleges are as follows:

THE DD FORM 214 WAS PROSCRIBED BY THE C.A. OF THE COURT MARTIAL, FAILING TO FOLLOW PROCEDURES TO LEGALLY TERMINATE MY EMPLOYMENT, (ENLISTMENT).  THE JURISDICTIONAL ISSUE, DUE TO THIS VIOLATION OF SUBSTANTIAL RIGHT, FROM THE JUDGE ADVOCATE GENERAL MANUAL, PARA 0101, NEGATES THE U.S.P. WARDEN'S JURISDICTION TO CONFINE THIS MILITARY PRISONER, REGARDLESS OF M.O.U. 94.

(Pet. 3.)

Respondent argues that the "administrative act by the military to dishonorably discharge the Petitioner" did not take place before the military courts, and therefore it is not

reflected in the trial record.   (Mot. 8:10-12.)   Respondent is

correct.   Petitioner expressly characterizes his dishonorable

discharge as an administrative act, and he refers to a specific

form which does not appear in the record of the court-martial.

(Pet. 3.)

The Court notes that Petitioner's appellate brief reports

the court-martial's disposition of Petitioner's charges as

follows:

> The members sentenced appellant to death, a
> dishonorable discharge, forfeiture of all pay and
> allowances, and reduction to pay grade E-1.   The
> convening authority approved only so much of
> the sentence as extended to confinement for life,
> in lieu of death, and the remainder of the sentence
> as adjudged, and, except for the dishonorable discharge,
> ordered it executed.

(Mot., Ex. 1, 8.)   The sentence was similarly described in the

government's appellate brief.   (Ex. 2, 11.)   The United States

Navy-Marine Corps Court of Military Review affirmed the findings

of guilt and the sentence; there is no indication that it

executed the portion of the sentence concerning the dishonorable

discharge.   (Ex. 3, 4.)   The record of "Supplementary General

Court-Martial Order Number G-004-94," dated May 18 or 25, 1994,

states that the sentence had been affirmed based on a denial of

clemency on September 30, 1993 by the Naval Clemency and Parole

Board, and it was further affirmed by the United States Court of

Military Appeals on January 26, 1994.   (Id. at 12.)   The order

states that because the provisions of Article 71(c) had been

complied with, "the dishonorable discharge will be executed," and

it directs that the "prisoner will be confined" in the United

States Disciplinary Barracks, Fort Leavenworth, Kansas, and the

1  confinement "will be served therein, or elsewhere as competent

2  authority may direct." (Id.)  It is signed by Lt. Col. R. M.

3  Craft, U. S. Marine Corps, the commanding officer of the U.S.M.C.

4  Marine Detachment at Fort Leavenworth, Kansas. (Id.)

5      In response to a query in the petition form seeking to

6  determine whether Petitioner had presented his claims to prison

7  officials in a prison administrative appeal, Petitioner states

8  that the claims are for "JURIST OF THE HIGHEST DEGREE TO ANSWER

9  AS LAW." (Pet. 3.)  Petitioner only generally states in the

10  petition that he has exhausted all military appeals and

11  administrative remedies, "TO INCLUDE CLEMENCY AND PAROLE BOARD

12  REVIEW." (Pet. 4.)

13      B.  Analysis

14          1.  Subject Matter Jurisdiction

15      Relief by way of a writ of habeas corpus extends to a

16  prisoner in custody under the authority of the United States who

17  shows that the custody violates the Constitution, laws, or

18  treaties of the United States.  28 U.S.C. § 2241(c)(3).  Although

19  a federal prisoner who challenges the validity or

20  constitutionality of his conviction must file a petition for writ

21  of habeas corpus pursuant to 28 U.S.C. § 2255, a federal prisoner

22  challenging the manner, location, or conditions of the execution

23  of a sentence must bring a petition for writ of habeas corpus

24  under 28 U.S.C. § 2241.  Hernandez v. Campbell, 204 F.3d 861,

25  864-65 (9th Cir. 2000).

26      Here, Petitioner, who is confined pursuant to the authority

27  of the United States, appears to be challenging the manner,

28  location, or conditions of the execution of his sentence.

24

1  Accordingly, the Court concludes that it has subject matter
2  jurisdiction over Petitioner's claim.

3           2.   Exhaustion of Administrative Remedies

4        As a "prudential matter," federal prisoners are generally
5  required to exhaust available administrative remedies before
6  bringing a habeas petition pursuant to 28 U.S.C. § 2241.  Huang
7  v. Ashcroft, 390 F.3d 1118, 1123 (9th Cir. 2004) (quoting Castro-
8  Cortez v. INS, 239 F.3d 1037, 1047 (9th Cir. 2001)); Martinez v.
9  Roberts, 804 F.2d 570, 571 (9th Cir. 1986).  The exhaustion
10 requirement applicable to petitions brought pursuant to § 2241 is
11 judicially created and is not a statutory requirement; thus, a
12 failure to exhaust does not deprive a court of jurisdiction over
13 the controversy.  Brown v. Rison, 895 F.2d 533, 535 (9th Cir.
14 1990), overruled on other grounds, Reno v. Koray, 515 U.S. 50,
15 54-55 (1995).

16       If a petitioner has not properly exhausted his or her
17 claims, a district court in its discretion may either excuse the
18 faulty exhaustion and reach the merits, or require the petitioner
19 to exhaust his administrative remedies before proceeding in
20 court.  Brown v.Rison, 895 F.2d 533, 535.  Exhaustion may be
21 excused if the administrative remedy is inadequate, ineffective,
22 or if attempting to exhaust would be futile or would cause
23 irreparable injury.  Fraley v. United States Bureau of Prisons, 1
24 F.3d 924, 925 (9th Cir. 1993); United Farm Workers of America v.
25 Arizona Agr. Emp. Rel. Bd., 669 F.2d 1249, 1253 (9th Cir. 1982).
26 Factors weighing in favor of requiring exhaustion include whether
27 1) agency expertise makes agency consideration necessary to
28 generate a proper record and reach a proper decision; 2)

1  relaxation of the requirement would encourage the deliberate

2  bypass of the administrative scheme; and 3) administrative review

3  is likely to allow the agency to correct its own mistakes and to

4  preclude the need for judicial review.  Noriega-Lopez v.

5  Ashcroft, 335 F.3d 874, 880-81 (9th Cir. 2003) (citing Montes v.

6  Thornburgh, 919 F.2d 531, 537 (9th Cir. 1990)).   Here,

7  Petitioner challenges the administrative aspects of his

8  dishonorable discharge, and specifically, the procedures

9  concerning his "DD Form 214" pursuant to 32 C.F.R. § 45.3, which

10 govern the policy and procedures for administrative issuance or

11 re-issuance of DD forms 214 and 215.  (Pet. 3.)

12      The precise grounds of Petitioner's challenge and the facts

13 underlying it are not clear.  However, it is established that one

14 seeking to challenge the merits of a decision to discharge or

15 separate an officer from the service, or the procedures

16 concerning a discharge certificate under the Administrative

17 Procedure Act, is required to file an administrative claim before

18 the Board for the Correction of Naval Records (BCNR), which is

19 empowered to correct a military record in order to correct an

20 error or to remove an injustice.  10 U.S.C. § 1552(a); Chappell

21 v. Wallace, 462 U.S. 296, 303 (1983).

22      The board's final decisions are subject to judicial review

23 and can be set aside if they are arbitrary, capricious, or not

24 supported by substantial evidence.  Chappell v. Wallace, 462 U.S.

25 at 303.  Specifically, a final decision of the BCNR not to

26 correct or change a military record may be reviewed by a federal

27 court to see if it is arbitrary, capricious, contrary to law, or

28 not supported by substantial evidence.  Calloway v. Harvey, 590

26

1 F.2d 29, 35 (D.D.C. 2008).  A court in such a proceeding is not

2 to substitute its judgment for that of the agency where there is

3 a satisfactory explanation for the action and a rational

4 connection between the facts found and the choice made.  Strong

5 policies support giving the widest possible latitude to the armed

6 services in their administration of personnel matters, and there

7 is a strong presumption that military administrators have

8 discharged their duties correctly, lawfully, and in good faith.

9 Id.

10      Here, Petitioner appears to be challenging the merits of the

11 decision to discharge him.  In this case, the unique disciplinary

12 system of the military renders especially weighty the need to

13 develop a factual record in an expert forum.  There is a high

14 likelihood that the agency will correctly apply the pertinent

15 regulations within its area of administrative expertise, correct

16 its own mistakes, if any, and preclude the need for judicial

17 review.

18      Accordingly, the Court declines to review Petitioner's claim

19 concerning the administrative aspects of his discharge because

20 Petitioner has not alleged or established that he has exhausted

21 his administrative remedies before the BCNR.  Petitioner's claim

22 will be dismissed, and Respondent's motion to dismiss

23 Petitioner's first claim concerning his discharge will be

24 granted.

25      In his opposition, Petitioner makes assertions that appear

26 to contradict his statement in the petition that he is a military

27 prisoner.  Petitioner states that the Marine Corps and any

28 competent authority have relinquished the right to hold him

because he has now become a civilian and is no longer a military prisoner; the time remaining on his sentenced imposed by the court-martial ended when he was discharged. (Opp. 9, 12-13.)  He further refers to the absence of a memorandum of understanding between the United States and the Federal Bureau of Prisons that would allow the latter to house military prisoners.  (Opp. 10-11.)  Finally, he appears to argue that Respondent attempted to deprive this Court of jurisdiction by transferring Petitioner from the United States Prison at Atwater, California, to the Federal Correctional Institution at Sheridan, Oregon.  (Opp. 14-15.).  As this Court has noted, it has jurisdiction over Respondent and Petitioner's transfer did not extinguish that jurisdiction.

    With respect to the remainder of Petitioner's arguments, the Court concludes that they are not sufficiently intelligible to be addressed.  Further, Petitioner's apparent failure to exhaust administrative remedies with respect to them renders it inappropriate to address them in this proceeding.  Title 10, U.S.C. § 858(a), expressly provides that a sentence of confinement adjudged by a court-martial or other military tribunal may be carried into execution by confinement in any place of confinement under the control of any of the armed forces or in any penal or correctional institution under the control of the United States, or which the United States may be allowed to use.  The statute further expressly provides that this is so regardless of whether or not the sentence included discharge or dismissal, and whether or not the discharge or dismissal has been executed.  Accordingly, the Court is unable to discern

Petitioner's precise contention or contentions concerning the execution of his sentence.  Under such circumstances, requiring exhaustion of administrative remedies is appropriate.

VIII.   <u>Disposition</u>

Accordingly, it is ORDERED that:

1) Respondent's motion to dismiss is GRANTED in part; and

2) The first claim in the petition for writ of habeas corpus, which concerns Petitioner's discharge, is DISMISSED without prejudice for Petitioner's failure to exhaust administrative remedies; and

3) Petitioner's petition for writ of habeas corpus is DENIED with respect to his second and third claims, which concern allegedly prejudicial conversations and prosecutorial misconduct, because the military tribunals gave full and fair consideration to such claims; and

4) Insofar as Petitioner seeks from this Court any further review of his second and third claims, the petition for writ of habeas is DISMISSED for lack of subject matter jurisdiction; and

5) The Clerk is DIRECTED to enter a judgment for Respondent on the Petitioner's second and third claims.


IT IS SO ORDERED.

**Dated:    November 15, 2010           /s/ Sheila K. Oberto          **
                                        UNITED STATES MAGISTRATE JUDGE